**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-02427-TC

———————

KARLYNN BEERMAN, ET AL.,

*Plaintiffs*

v.

HONEYWELL INTERNATIONAL, INC., ET AL.,

*Defendants*

———————

### MEMORANDUM AND ORDER

Plaintiffs Karlynn Beerman and Mike Burgin sued Honeywell International, Inc., alleging that Honeywell's negligence in servicing Martin Beerman's airplane flight computer resulted in his wrongful death. Doc. 137. Honeywell moves for summary judgment, Doc. 141, and both sides have filed several motions seeking to exclude experts and strike pleadings, Docs. 138–141, 143–147, 163, and 170. For the following reasons, Honeywell's motion for summary judgment is granted, and the other motions are denied as moot.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed,

1

belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

This is a case about an airplane crash that killed Martin Beerman. Plaintiffs allege that Honeywell's negligent repair work caused the fatal crash. The following facts are uncontroverted or, if controverted, are viewed in the light most favorable to Plaintiffs.

**1.** On August 20, 2021, Martin Beerman was piloting his Socata TBM 700A airplane to pick up his son-in-law in Cincinnati, Ohio. Doc. 137 at ¶¶ 2.a.iii, 2.a.ix.[1] Beerman departed the Erie Ottaway Airport in Port Clinton, Ohio, en route to the Cincinnati Municipal Airport. *Id.* at ¶ 2.a.ii. After departure, the airplane ascended to roughly 20,000 feet. Doc. 149 at ¶ 35. Approximately thirty minutes later, air traffic control gave Beerman clearance to descend to 10,000 feet. *Id.* at ¶ 36. Roughly six minutes after that, the airplane entered a sudden and sharp roll to

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

the left. *Id.* at ¶ 37. Beerman was unable to correct the airplane's trajectory, the airplane crashed, and Beerman died as a result.

The airplane was equipped with a Honeywell KFC 325 autopilot system. Doc. 137 at ¶ 2.a.x. The autopilot comprised various parts, two of which are relevant here: a KCP 220 flight computer and a roll servo. *Id.* When the autopilot is engaged, the computer sends electrical signals to the roll servo to turn the airplane left and right. Doc. 142 at ¶ 6. Honeywell manufactured the roll servo in 1997, and the airplane's manufacturer, Socata, purchased the roll servo in 1998. *Id.* at ¶¶ 7, 8. The roll servo operated in the airplane for roughly 2,624 flight hours. *Id.* at ¶ 12. Neither Honeywell nor any other entity repaired or serviced the roll servo after it was installed in the airplane. *Id.* at ¶¶ 13, 14; Doc. 137 at ¶ 2.a.xii. Honeywell did, however, service the flight computer. Doc. 142 at ¶ 21. Whether Honeywell did so negligently is at the heart of this dispute.

Plaintiffs' lone remaining contention is that Honeywell negligently serviced the flight computer. Doc. 137 at ¶ 4.a.i.[2] In particular, they focus on the work that Honeywell performed in 2016, roughly five years before Beerman purchased the airplane from its prior owner. *Id.* As a result, a description of the previous owner's experience with the airplane is necessary to provide context to Plaintiffs' claim.

In 2016, the airplane's previous owner, Kevin Scott, had the flight computer sent to Honeywell for evaluation and service. In particular, Satnan Avionics—the company in possession of Scott's airplane at the time—removed the flight computer and sent it to Honeywell via another company named Capital Avionics. Doc. 142 at ¶¶ 17, 18. Satnan sent the computer to Capital Avionics, and Capital Avionics then sent it to a Honeywell repair station in Olathe, Kansas, noting that the customer requested "unit evaluation," that the airplane "rolled to an

---

[2] The only two claims that Plaintiffs preserved in the pretrial order were a negligence claim (Count I) and a claim for *res ipsa loquitur* (Count V). Doc. 137 at ¶ 4.a. Honeywell seeks summary judgment as to the *res ipsa loquitur* claim because it is not viable under Ohio law. Doc. 142 at 18. Plaintiffs agree: "*Res ipsa loquitur* is an evidentiary doctrine and not an independent cause of action." Doc. 149 at 25; *see Jennings Buick, Inc. v. City of Cincinnati*, 406 N.E.2d 1385, 1387 (Ohio 1980); Dobbs's Law of Torts § 169 (2d ed.) ("Res ipsa loquitur is not a cause of action . . . ."). As a result, Honeywell's motion for summary judgment as to Count V is granted.

3

excess 45 degree bank before pilot disconnected [autopilot]," and that the "[u]nit must be returned to factory for repair/modification evaluation." Doc. 142-12 at 2; Doc. 142 at ¶ 19. There is no dispute that Honeywell received only the flight computer and not the roll servo. Doc. 142 at ¶ 20.

Honeywell was unable to duplicate the reported discrepancy in the flight computer. Doc. 142-12 at 2. It noted that the flight computer's "bench test, cold test, hot test, vibe test and final test passed." Doc. 142-13 at 3. Honeywell returned the flight computer to Satnan, who then reinstalled it and returned the airplane to Scott. Scott had no issues with either the flight computer or the roll servo after he received it back from Honeywell, and he made no other service requests to Honeywell while he owned the airplane. Doc. 142 at ¶ 23.

Scott sold the airplane to Beerman in 2021. Doc. 137 at ¶ 2.a.v. Nine days later, the fatal accident occurred. *Id.*

From the time of the flight computer's inspection in 2016 to the time of the accident in 2021, the roll servo operated for an additional 570 flight hours without issue. Doc. 142 at ¶ 24. The parties agree that the flight computer was not defective and did not cause the crash. *Id.* at ¶ 22.

**2.** Beerman's widow, Karlynn Beerman, and the executor of his estate, Mike Burgin, filed suit against Honeywell.[3] They bring a claim of wrongful death arising under Ohio law, arguing that Honeywell's negligent maintenance of the flight computer caused the accident. Doc. 137 at ¶ 4.a.i. In particular, Plaintiffs argue that Honeywell, in January and February of 2016, "failed to inspect and test the complete autopilot system and was negligent in repairing it." *Id.* The specific negligent act or omission, according to Plaintiffs, is that Honeywell did not but should have requested, inspected, and serviced the roll servo when it received the flight computer for its 2016 service.

Honeywell moves for summary judgment. Doc. 141. It argues that Plaintiffs' claim is barred by the General Aviation Revitalization Act's statute of repose on claims against aircraft manufacturers and by Ohio's similar statute. Doc. 142 at 8, 13. It also argues that it did not

---

[3] Plaintiffs initially filed suit against various defendants, but only Honeywell remains.

4

have a duty to request the roll servo and that its alleged breach did not cause the accident. *Id.* at 14, 17.

In addition, the parties have filed eight motions to exclude each other's experts. Docs. 138–140, 143–147. Honeywell has also filed a motion to strike the affidavits of three of Plaintiffs' experts. Doc. 163. And Plaintiffs have filed a motion to amend two of those affidavits. Doc. 170.

## II

Plaintiffs' negligence claim fails as a matter of law. For one thing, it necessarily presumes that the roll servo was defective and is therefore barred by federal and Ohio statutes of repose. Moreover, Plaintiffs have failed to raise a genuine dispute of fact regarding the elements of duty and causation. Accordingly, Honeywell's motion for summary judgment is granted.[4]

### A

Honeywell's first line of defense is that Plaintiffs' claim is barred by two different statutes of repose. That contention is correct.

**1.** Honeywell first argues that the General Aviation Revitalization Act (GARA), Pub. L. No. 103-298, 108 Stat. 1552, bars Plaintiffs' claim. Doc. 142 at 8. Resolution of that argument starts with the statutory text. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 378 (2018) (noting that statutory analysis "begins with the text").

The relevant section of the Act states as follows:

> [N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the

---

[4] Resolution of Honeywell's motion for summary judgment does not rest on any of the expert testimony that the parties challenge. As a result, each motion to exclude, Docs. 138, 139, 140, 143, 144, 145, 146, and 147, the motion to strike expert affidavits, Doc. 163, and the motion to amend, Doc. 170, are denied as moot. *See Adhealth, Ltd. v. Portercare Adventist Health Sys.*, 135 F.4th 1241, 1245 n.3 (10th Cir. 2025) (affirming the district court's denial of a motion to exclude testimony as moot).

> manufacturer of any new component, system, subassembly, or other part of the aircraft, *in its capacity as a manufacturer* if the accident occurred . . . after [eighteen years from the date of manufacture].

49 U.S.C. § 40101 Notes, § 2 (emphasis added).

The parties' dispute is not about how the statute operates. All agree that if Plaintiffs' remaining claim is a "civil action . . . against the manufacturer of the aircraft . . . in its capacity as a manufacturer," it is precluded.

Honeywell argues that Plaintiffs bring their claim against it in its capacity as a manufacturer because their theory "sound[s] in product liability." Doc. 169 at 5. It contends that the substance of Plaintiffs' claim is that Honeywell improperly manufactured the roll servo and because of that should have requested the roll servo be sent along with the flight computer so that Honeywell could have inspected and repaired the roll servo. Doc. 169 at 6–7.

Plaintiffs say otherwise. They initially argued that the roll servo had a manufacturing defect. Doc. 1-1 at 8. And most of their experts' opinions depend on that contention. *See, e.g.*, Docs. 143-1, 144-2 at 21, 145-1. Plaintiffs now contend, however, that they are no longer bringing such a claim. Doc. 137 at ¶ 4.a.i. & n.1. Instead, they purport to be pursuing a different source of negligence: Honeywell's failure to request an opportunity to evaluate the defective roll servo when it serviced the flight computer in 2016. Doc. 149 at ¶¶ 39, 40, 45; Doc. 137 at ¶ 4.a.i.

GARA does not define the term "capacity as a manufacturer," and the Tenth Circuit has not analyzed its meaning. Nor have the parties identified persuasive authority from other jurisdictions defining that term. Accordingly, the term is understood to have its "ordinary, contemporary, common meaning." *Kientz v. Comm'r, SSA*, 954 F.3d 1277, 1281 (10th Cir. 2020) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

A contemporary dictionary definition is a helpful source of ordinary, common meaning. *See, e.g.*, *In re Wesley*, __ F.4th __, 2026 WL 181349, at *5 (10th Cir. Jan. 23, 2026). The term "capacity as a manufacturer" comprises two words: "capacity" and "manufacturer." A manufacturer is one who is "engaged in producing or assembling new

6

products." *Manufacturer*, BLACK'S LAW DICTIONARY (11th ed. 2019). And "capacity" relates to "[t]he role in which one performs an act." *Capacity*, BLACK'S LAW DICTIONARY, (11th ed. 2019). Honeywell is unquestionably a producer of new products, so it follows that GARA bars claims that seek to hold Honeywell liable for acts that it took in its role as a producer of new products.

Despite Plaintiffs' current characterization, their claim is one against Honeywell in its capacity as a manufacturer because it depends on an alleged defect in the roll servo that Honeywell manufactured. *Contra* Doc. 149 at 11. One need look no further than to how Plaintiffs' summary judgment brief describes the basis of their claim. Their claim is a civil action for damages arising out of a defect in an airplane component. *See* Doc. 149 at 15–20 (explaining how a defect in the roll servo caused the accident). In particular, Plaintiffs argue that the roll servo had several "specific manufacturing flaws." *Id.* at 16. They explain that these defects were present in 2016 when Honeywell inspected the flight computer. *Id.* at 17. They further explain that these defects in the roll servo caused the crash and that the similarity between Scott's complaint and the airplane's uncommanded roll indicate "a connection between the previously reported issue and the ultimate crash." *Id.* at 17–20. Attaching a negligence label to the claim does not change the substance of what Plaintiffs are seeking to do. *Cf. Kaschak v. Bankers Healthcare Grp., LLC*, No. 23-cv-15452, 2024 WL 1797925, at *6 (N.D. Ill. Apr. 25, 2024) ("If it walks like a duck, and quacks like a duck, then it's probably a duck—even if the duck calls itself a chicken."); *accord Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009). Plaintiffs' claim against Honeywell, in nature and substance, is a defective product claim.

Not surprisingly, that view is confirmed by the experts' opinions that form the basis of Plaintiffs' claim. For example, Plaintiffs rely on Jerry Stooksbury, who opined that Honeywell should have discovered the defect in the roll servo. Doc. 143-1 at 4. They also point to Federico Campbell, who opined that the roll servo was defective. Doc. 144-2 at 21. And one of their experts, Jack Goho, goes into detail about how specifically Honeywell manufactured the roll servo improperly. Doc. 145-1.

More importantly, Plaintiffs argue that Honeywell's status as the manufacturer of the roll servo defines its duty. They argue that Honeywell's "unique position as the [roll servo's manufacturer]" should be considered when determining whether Honeywell negligently serviced

7

the flight computer. *Id.* at 14. That is important, according to Plaintiffs, because there is a causal link between this defect and the crash. *See* Doc. 149 at 17.

Plaintiffs' effort to avoid this conclusion by reframing their claim as a negligence claim is unpersuasive. Specifically, they argue that theirs is a claim based only on Honeywell's negligent inspection, and they disclaim any intent to claim the roll servo was defective. Doc. 149 at 2. And, as a result, they contend that their characterization should control. But federal courts have a duty to look beyond labels to determine the substance of a claim. *Cf. Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1229 (10th Cir. 2021) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1286 (4th ed. 2023)) (noting that a pleading "will be judged by the quality of its substance rather than according to its form or label"). The crux of Plaintiffs' claim is that the roll servo was defective and that this defect caused the accident. Doc. 149 at 17. According to Plaintiffs, Honeywell should have requested the roll servo be sent to it (along with the flight computer) and had it been sent Honeywell should have discovered the defect. Plaintiffs proffer much evidence to prove that theory. *See id.* at 15 (arguing that the roll servo had "pre-existing defects"); *id.* at 17 (establishing a link between the defect and the crash).

Attempts like Plaintiffs' to avoid GARA's reach by reframing the claim are not unusual. For example, in *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333 (6th Cir. 2013), the plaintiffs alleged that the defendant was liable not as a manufacturer but for negligently publishing maintenance manuals. *Crouch*, 720 F.3d at 337. The Sixth Circuit rejected this theory, reasoning that the plaintiffs' claim sought to attach liability to an act that was intertwined with the defendant's role as a manufacturer. *Id.* at 339; *see also Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 550 (Iowa 2002) (holding that a suit for the alleged negligent publication of a maintenance manual was against the manufacturer in its capacity as a manufacturer).

So, too, in the California Court of Appeals, where the court held that a suit was against the defendant in its capacity as a manufacturer. In *Burroughs v. Precision Airmotive Corp.*, 93 Cal. Rptr. 2d 124 (Cal. Ct. App. 2000), the plaintiff sued an aircraft parts manufacturer that had purchased a carburetor product line. *Burroughs*, 93 Cal. Rptr. 2d at 126. The plaintiff argued that the defendant was negligent because it failed to warn customers of the carburetor's defects by not sending out relevant service manual. *Id.* at 131. The California Court of Appeals

8

rejected this argument, finding that the defendant was acting in its capacity as a manufacturer when it sent the service manuals because federal law required manufacturers to send service manuals. *Id.* at 133–34.

\* \* \*

There is no dispute that the accident occurred more than eighteen years after the roll servo's manufacture. Doc. 142 at ¶¶ 7, 11. And all of Plaintiffs' evidence and arguments focus on the alleged defect in the roll servo. *See generally* Doc. 149. As a result, Plaintiffs' claim is barred by GARA because it is against Honeywell in its "capacity as a manufacturer."

**2.** Honeywell also argues that, even if GARA does not bar the claim, state statutes of repose do. Doc. 142 at 12–14. Honeywell invokes both Kansas and Ohio law and argues that both states' statutes of repose bar Plaintiffs' suit. *Id.*

The substantive law of Ohio governs this dispute. A Kansas federal court sitting in diversity must apply Kansas's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Kansas follows the doctrine of *lex loci delicti*, under which "the situs of the injury determines the governing law." *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985). It is undisputed that Beerman's death occurred in Ohio. Doc. 137 at ¶ 2.a.iii. Accordingly, Ohio substantive law applies.[5] *See Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1268 (10th Cir. 2013) (applying Kansas law where the tort occurred in Kansas); *see also Banner Bank v. Smith*, 30 F.4th 1232, 1238 (10th Cir. 2022)

---

[5] Honeywell suggests that Kansas substantive law provides the appropriate statute of repose. Doc. 137 at ¶ 1.d. (claiming that "the case has proceeded under Kansas law and plaintiffs have waived any argument that a different law governs"); *see also* Doc.78 at 6 (assuming without deciding that Kansas law applied when rejecting Honeywell's motion to dismiss the claim under Kansas's statute of repose because the argument was dependent on facts not pled in Plaintiffs' Complaint). But it has failed to offer a reasoned basis for such a conclusion. *See* Doc. 142 at 12; *see also United States v. Clay*, 148 F.4th 1181, 1201 (10th Cir. 2025) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are not considered). As noted, Kansas choice-of-law principles dictate that Ohio law governs this dispute.

(noting that "[i]n a diversity case . . . the *Erie* doctrine requires federal courts to apply federal procedural law and state substantive law").

Honeywell argues that Ohio's statute of repose precludes Plaintiffs' negligence claim.[6] Doc. 142 at 13. That statute states as follows:

> [N]o cause of action *based on a product liability claim* shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product.

Ohio Rev. Code Ann. § 2305.10(C)(1) (emphasis added).

The Ohio statute of repose bars Plaintiffs' claim. *Contra* Doc. 149 at 24. As noted above, the substance of Plaintiffs' claim depends on the roll servo's defect and Honeywell's failure to discover it. Under Ohio law, that qualifies as a product liability claim because it seeks to hold Honeywell liable for defects in the roll servo. *See* Ohio Rev. Code Ann. § 2307.71(A)(13)(a) (defining a product liability claim as one that seeks damages from a manufacturer on account of a defective product); *see also Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 919 (N.D. Ohio 2009) (finding that a purported negligence claim was a product liability claim when it sought to hold the defendant liable for, among other things, negligent "servicing, and/or maintenance"). And there is no dispute that the roll servo is a product under Ohio law. *See* Ohio Rev. Code Ann. § 2307.71(A)(12)(a).

Plaintiffs' only argument in opposition is that their claim is a negligence claim. Doc. 149 at 24–25. But as explained above, Plaintiffs' attempt to disguise their product liability claim as a negligence claim fails because it depends on evidence that the roll servo was defective.

---

[6] Because Ohio law governs this dispute, Honeywell's argument that Kansas law bars Plaintiffs' claim is not considered. *See* Doc. 142 at 12 (arguing that Plaintiffs' claim is barred by the Kansas statute of repose).

**B**

Honeywell also argues that Plaintiffs' claim fails on the merits. Resolution of that argument is guided by Ohio negligence law.

To prove actionable negligence in Ohio, a plaintiff must establish the existence of a legal duty, the defendant's breach of that duty, and an injury that was proximately caused by the breach. *Berkheimer v. REKM, L.L.C.*, 253 N.E.3d 1, 4 (Ohio 2024). "A defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Snay v. Burr*, 189 N.E.3d 758, 762 (Ohio 2021). Generally speaking, individuals must exercise a degree of care "that an ordinarily careful and prudent person would exercise under similar circumstances." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 29 N.E.3d 921, 929 (Ohio 2015). And the proximate cause of an event is "that which in a natural and continuous sequence, unbroken by any new independent cause, produces that event and without which that event would not have occurred." *Auto Recyclers of Middletown, Inc. v. Stein, LLC*, 263 N.E.3d 1070, 1081 (Ohio Ct. App. 2025). Proximate cause contemplates a probable or likely result, not merely a possible one. *Id.* It is thus not subject to "speculation or conjecture." *Id.* The plaintiff's failure to prove any element of a negligence claim is fatal. *Id.*

**1.** Honeywell first argues that there was no legal duty to request and then inspect the roll servo.[7] Doc. 142 at 14–17. Plaintiffs, in turn, argue that Honeywell had a duty to ask that Scott send the roll servo to it for inspection alongside the flight computer, and that Honeywell's failure to do so was a breach. Doc. 149 at 12–14, 20–21.

"The existence of a duty is a question of law." *Delta Fuels, Inc. v. Consol. Env't Servs., Inc.*, 969 N.E.2d 800, 805 (Ohio Ct. App. 2012).

---

[7] This conduct occurred in 2016, five years before Beerman purchased the aircraft from Kevin Scott. As a result, it is not immediately clear that Honeywell's alleged duty extended to Beerman. *See Snay v. Burr*, 189 N.E.3d 758, 762 (Ohio 2021) ("A defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position."). But Honeywell did not make that argument. Nor did it make any statute of limitations argument. *See Norris v. Basden*, 238 N.E.3d 946, 956 (noting that negligence claims are subject to a two-year statute of limitations). As a result, those issues have not been considered.

And according to the Ohio Supreme Court, a repair shop must exercise ordinary skill and judgment in performing the services and repairs requested by the customer. *Landon v. Lee Motors, Inc.*, 118 N.E.2d 147, 158 (Ohio 1954). The scope of a repair shop's duty is defined by the specific service or repair requested by the customer. *See, e.g.*, *Gerber v. Jim's Goodyear*, 1998 WL 142404, at *2 (Ohio Ct. App. Mar. 30, 1998) (concluding that a repair shop did not breach its duty to replace the timing belt because the customer only requested the shop to replace the water pump). A repair shop does not have a duty to search for and discover a latent defect unless it specifically undertook to do so. *Landon*, 118 N.E.2d at 158; *accord Romans v. Tex. Instruments, Inc.*, 2013 WL 6094299, at *14 (Ohio Ct. App. Nov. 18, 2013).

Under Ohio law, Honeywell was under no legal duty to request and inspect the roll servo. Scott sent the flight computer to Honeywell for service; he did not send the roll servo. Doc. 142-12 at 2; Doc. 142 at ¶¶ 19, 20. Based on that request, Honeywell evaluated and tested the flight computer that it received. Doc. 142-13 at 3. There is no evidence or argument that Honeywell undertook a duty to inspect parts other than the flight computer. To the contrary, Honeywell only undertook to inspect the flight computer in response to Scott's request. Doc. 142-12 at 2; Doc. 142 at ¶ 19. It did so and noted that it was unable to recreate the reported issue. Doc. 142-12 at 2.

Ohio caselaw confirms this conclusion. In *Landon v. Lee Motors*, the plaintiff was in a car accident that he asserted was caused by a defect in the car's steering column. *Landon*, 118 N.E.2d at 156. He argued that the defendant, who had serviced the car, negligently failed to inspect the car's steering column. *Id.* The Ohio Supreme Court disagreed, concluding that, even assuming the steering column was defective when the defendant serviced the car, the defendant was not negligent because the plaintiff had not ordered the defendant to thoroughly inspect the steering column. *Id.* at 158–59. The duty under Ohio law had been satisfied because the repair shop had exercised its best judgment when it inspected the car and noticed no issue. There being no evidence that the plaintiff had requested a detailed inspection, the Ohio Supreme Court held that the defendant had not breached its duty of care. *Id.* at 159. "At best, a verdict for plaintiff could only be based on conjecture, guess, random judgment, or supposition and could not thereby be upheld." *Landon*, 118 N.E.2d at 157.

Plaintiffs' claim against Honeywell is less compelling than the claim rejected in *Landon*. Even if the roll servo had been defective in 2016, it

12

would not matter because Scott only asked Honeywell to service the flight computer. At no point did Scott (or those acting on his behalf) ask Honeywell to service or inspect the roll servo. *Landon* shows that, because Honeywell was never asked to evaluate the roll servo and did not undertake the obligation do so, it cannot be found liable for failing to inspect the roll servo. *See Landon*, 118 N.E.2d at 158 ("No liability can be imposed upon defendant for its alleged failure to discover a latent defect, unless the evidence shows that it undertook to do so and negligently failed to discover the defect.").

A more recent case, *Risk v. Woeste Eastside Motors, Inc.*, 696 N.E.2d 283 (Ohio Ct. App. 1997), confirms the vitality of the principle recognized in *Landon*. In *Risk*, the plaintiff's daughter took his car to the defendant's shop for a 90,000-mile service. *Risk*, 696 N.E.2d at 283. The car's timing belt subsequently malfunctioned and damaged the engine. *Id.* The plaintiff argued that the defendant was negligent in failing to inform him that the manufacturer recommended replacing the timing belt given the car's mileage. *Id.* at 283, 285. Applying *Landon*, the Ohio Court of Appeals found that the defendant did not have a duty to check the timing belt. *Id.* at 285. The plaintiff had requested a 90,000-mile service, the defendant performed that service, and there was no evidence that checking the timing belt was "within the scope of the services requested." *Id.*

*Landon* and *Risk* confirm that Plaintiffs' claim fails. Honeywell evaluated the flight computer as requested. There is no evidence that Honeywell's decision not to obtain or evaluate the roll servo breached its duty of care under Ohio law.

Honeywell's Repair Station Manual does not support Plaintiffs' claim. *Contra* Doc. 149 at 12–13. The Manual "outlines the specific duties and responsibilities incumbent upon [Honeywell]." *Id.* at 12. In particular, it provides that Honeywell is only responsible for servicing the parts it actually receives. Section 5.3, for instance, notes that "all articles to be serviced by Honeywell" would be inspected "upon receipt" to determine necessary repairs. Doc. 149-7 at 21. The same is true of section 5.5, which notes that "[b]efore this repair station starts work, all units and components known or suspected to have been involved in an accident . . . will be evaluated for the necessity of a thorough inspection for possible hidden damage." *Id.* at 24. Finally, section 5.6 notes that a Honeywell inspector will "inspect the article and the work order to determine whether the work was accomplished." *Id.* at

25. These sections show that the scope of Honeywell's work was limited to the unit it received: the flight computer.

Plaintiffs' counterarguments are unpersuasive. They maintain that it is "important to consider Honeywell's unique position as the [manufacturer] of both the KCP 220 [flight computer] and the roll servo." Doc. 149 at 14. In Plaintiffs' view, Honeywell had "unique, intimate knowledge of the interplay between the computer and the roll servo." *Id.* at 21. Given this knowledge, Plaintiffs posit, Honeywell should have known that if the flight computer was not causing Scott's complaint, then the roll servo must have been the culprit.

This argument fails. For one thing, it runs headlong into seeking to impose liability on Honeywell because it is a manufacturer, something the parties agree GARA precludes. And for another, it contradicts the framing that Plaintiffs are merely asserting that Honeywell breached an ordinary duty to repair or inspect, which they made to avoid the reach of GARA. Plaintiffs fail to identify any law that required Honeywell to inspect the flight computer with anything other ordinary skill and judgment. *See Landon*, 118 N.E.2d at 158 (explaining what the duty owed by a repair shop).

**2.** Honeywell also argues that Plaintiffs' claim fails on causation. Doc.142 at 17. Ohio law holds a defendant negligent when its breach of a duty causes a plaintiff's injury. *Berkheimer*, 253 N.E.3d at 4. Proximate cause is "that which in a natural and continuous sequence, unbroken by any new independent cause, produces [an injury] and without which [the injury] would not have occurred." *Auto Recyclers*, 263 N.E.3d at 1081. It contemplates a probable or likely result, not merely a possible one. *Id.* It is thus not subject to "speculation or conjecture." *Id.* At the summary judgment stage, the issue of proximate cause may be determined as a matter of law if the record demonstrates no genuine issue of material fact that remains to be litigated. *Davis v. Royal Paper Stock Co.*, 201 N.E.3d 506, 521 (Ohio Ct. App. 2022).

Plaintiffs' theory of causation precludes relief. Even if Honeywell had a duty under Ohio law to request and inspect the roll servo, there is no evidence that this breach in 2016 proximately caused the crash in 2021. There is no evidence, and Plaintiffs make no argument, that Honeywell should have anticipated that its failure to request the roll servo would result in Beerman's death five years later. *See Moshi v. Kia Am., Inc.*, 155 F.4th 652, 656 (6th Cir. 2025) ("[A] defendant is liable for harms that a reasonably prudent person in the defendant's position

should have anticipated."). Plaintiffs note that their experts' testimony "yielded direct support for Plaintiffs' causation theory." Doc. 149 at 18. Not so. The expert testimony that Plaintiffs champion is concerned with whether the alleged defect in the roll servo caused the accident and whether an inspection of the roll servo in 2016 would have uncovered the defect. *See* Doc. 149 at 18–20. Again, that is not the theory of liability set forth in the Pretrial Order. *See* Doc. 137 at ¶ 4.a.i (arguing that Honeywell negligently serviced the flight computer).

Plaintiffs' theory of liability—that Honeywell's failure to request the roll servo caused the accident—is devoid of evidence. Plaintiffs offer no evidence that the airplane crash was the natural and probable consequence of Honeywell's failure to request the roll servo. *See Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 258 N.E.3d 470, 495 (Ohio Ct. App. 2024) ("An act is a proximate cause of an injury when the injury sustained is the natural and probable consequence of the act."). Neither is there any evidence in the record nor argument from Plaintiffs that Honeywell's failure to request the roll servo was a substantial factor in Beerman's crash. *See* Restatement (Second) of Torts § 431 (1965) (noting that a breach is a legal cause of a harm if it is "a substantial factor in bringing about the harm"). After all, the crash happened five years after the alleged breach and, in the intervening years, the aircraft performed as expected.

Plaintiffs' theory of causation depends on a chain of assumptions and speculation. They contend that the roll servo was defective and Honeywell *should have* suspected that and preemptively asked Scott to send the roll servo to Honeywell (along with any other part that might have caused an excess 45 degree roll). Doc. 149 at ¶ 47 (noting that there were many factors that could have caused an excess 45 degree roll). And had Honeywell done so, the theory continues, Scott *would have* sent the roll servo (and all other parts) to Honeywell, Honeywell *would have* found the alleged defect and reported it back to Scott, and then Scott *would have* agreed to have the work performed on the roll servo. *See* Doc. 142-12 at 4 (noting that Scott required a quote "before any work is performed"). Continuing with their chain of causation, Plaintiffs surmise that the roll servo would then have been repaired and would have suffered no subsequent damage or malfunction. Had all this occurred, Plaintiffs contend, Beerman thus would not have crashed five years later.

This theory fails as a matter of Ohio law. Where the evidence of proximate cause is "too meager and inconclusive," *Rieger*, 138 N.E.3d

15

at 1126, the defendant is entitled to summary judgment. Proximate cause contemplates a "probable or likely result, not merely a possible one." *Auto Recyclers*, 263 N.E.3d at 1082. But Plaintiffs' theory is a five-year daisy chain of supposition devoid of evidence supporting it; the facts that do exist actually undermine believing that events would have unfolded as Plaintiffs posit. This type of unsupported supposition is insufficient to create a genuine issue of material fact. *See Est. of Hurtado by & through Hurtado v. Smith*, 119 F.4th 1233, 1238 (10th Cir. 2024) (quoting *Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006)) ("Summary judgment requires more than mere speculation."). Although it is metaphysically possible to imagine this chain of events unfolding, Plaintiffs have offered no record evidence to support it in this case. As a result, Honeywell is entitled to judgment as a matter of law. *See Geometwatch Corp. v. Behunin*, 38 F.4th 1183, 1205 (10th Cir. 2022) ("A non-moving party may evade summary judgment on the issue of causation by pointing to record evidence from which a reasonable jury could infer a causal nexus between the movant's conduct and the nonmovant's injury; but the nonmovant may not evade summary judgment by speculating about possibilities or hypotheticals that have de minimis to no support in the record.").

\* \* \*

Beerman's death was an indisputable tragedy. But Honeywell is not liable for it under Ohio law.

### III

For the foregoing reasons, Honeywell's Motion for Summary Judgment, Doc. 141, is GRANTED, its Motions to Exclude Experts, Docs. 143, 144, 145, 146, and 147, are DENIED AS MOOT, and its Motion to Strike, Doc. 163, is DENIED AS MOOT. Plaintiffs' Motions to Exclude Experts, Docs. 138, 139, and 140, are DENIED AS MOOT, and its Motion to Amend, Doc. 170, is DENIED AS MOOT.

It is so ordered.

Date: January 30, 2026                 　s/ Toby Crouse　
　　　　　　　　　　　　　　　　　　Toby Crouse
　　　　　　　　　　　　　　　　　　United States District Judge